Good morning, and welcome to the fourth and final day of our sitting here in Atlanta. Judge Luck and I are pleased to be joined virtually, if you will, by our colleague, Judge Choflat. He would have been with us on the bench here, but was feeling a little under the weather earlier in the week, so headed home to Jacksonville to recuperate. But he is going to be listening to the arguments. And so just know that as you're speaking to us, you're speaking to him as well. And a couple of rules of the road before we get started. Please know, as I'm sure you do, that we have read your materials. We've read the briefs and the underlying materials, the cases, the statutes, the record, you know, the pieces of the record that are relevant. And so don't, with the limited time you've got before us today, don't waste your own time with factual and procedural ramp up. Just get right to it. The traffic light system, I'm sure you understand, green go, yellow, slow down, red. I'm not the kind of guy who's going to cut you off in the middle of a sentence. I just can't quite bring myself to do it. But we would ask that you begin to wind your presentation up when you see the red light. It may well be that we carry you beyond your allotted time, if that's fine, as one of my colleagues likes to say, you're on our time, not yours, so don't worry about that. So with that, we'll call the first case, which is, I'm going to give it my, the old college try here, Turchikovitch v. Ford Motor. We have Mr. Beisner here for the appellant, Mr. Berman here for the appellees. Mr. Beisner, whenever you're ready. Good morning, Your Honors. May it please the Court. My name is John Beisner, and I'm counsel for Appellant Ford Motor Company. This litigation was brought by the purchasers of the base and technology models of a performance vehicle, the Mustang Shelby GT350. And those buyers contend that Ford engaged in a variety of misrepresentations that resulted in them not knowing that if they wanted to use their vehicle for a single particular type of racing known as track days, they should have bought one of three other models of the vehicle with optional additional cooling equipment to lessen the likelihood that the vehicle would go into what plaintiffs call limp mode. Can I ask you a quick question just to sort of get my own head around the allegations here? It seems like at one point the case was about misrepresentations. It seems like now the sort of the target may be shifting, and the case may be evolving into something about omissions. Can you just help clarify what are we talking about here? Are these misrepresentations? Is it a misrepresentation case, an omission case, or some combination of those two things? Well, Your Honor, I think it's very difficult to call it an omissions case. If you look at the record here, the court's class certification order specifically says that this is a misrepresentation case. Even in opposing review by this court, the plaintiffs said they alleged that Ford marketed the class vehicles as all-day track cars. You don't dispute, though, that it was argued both to the district court at class certification, on summary judgment, and then again here, that there were omissions made. It's a combination, Your Honor. They're saying that there were omissions made, but I don't think you get to the omissions unless you have a misrepresentation argument up front. No, there's no question. They're saying that statements were made, and then blanks were not filled. So your point, then, from my practice days, I think I recall that in fraud cases like this, there are affirmative misrepresentations, there are pure omission cases, and then there are what I would call half-truth cases or hybrid cases. Is this the third bucket? I think it probably fits in the third bucket, Your Honor. And I think in terms, if you go through the State-by-State analysis in these cases where presumptions can be used, those sorts of things that we're talking about here, I don't think it matters very much. Okay. So I agree with you there. So that's where I want to go. So speaking of buckets, I look at the law as in three separate buckets. And I want to know your view, and I'm going to ask your opposing counsel the same. There seem to be States that require reliance and don't allow presumptions. There seem to be States that don't require reliance, and then there seem to be States that require reliance but do allow presumptions. And then there's an A and a B under those. A is presumptions allowing for price premium theories and presumptions allowing for sort of what I'll call extensive advertising theories. Everybody heard it. Is that a fair representation of the universe of law? And I think, yes, Your Honor, and I think within the States, it depends on the circumstances of a particular case. But at least is my general description okay? Yes. I'm very linear. I like to think about things in sort of pockets or buckets. So if that's a fair description of it, let's go through it. So tell me right now which States require reliance and do not allow for any sort of presumption. I think I would start with Texas. The Court addressed that issue in Brown. That was an omissions case, and they said you cannot make any presumptions about reliance that's needed there. Okay. So Texas. What else? Tennessee, I would put in the same bucket. The Crouch case from the Tennessee Court of Appeals says in a fraud case, you can never make any presumptions. Okay. And each class member has to go through. New York does not require reliance. But if you look at the Solomon v. Bell-Atlantic case, which I think is key here, it says that class certification is not appropriate where the plaintiffs do not point to any specific advertisement or public pronouncement by the defendant that was undoubtedly seen by all class members. As to the common law theory, doesn't New York require reliance? Not under its consumer statute. Yes, it does require as to the common law theory. So we have to separate those out, remember, because they bring a claim under the consumer protection statute and under a common law fraud theory. That's right, Your Honor. And if you go through, particularly I think it's important to look at the Ford E-350 case, which I think does an exceptionally good job of going through current New York law in that area, you do have to show deception and causation in injury. So if I agree with you as to those three, New York on fraudulent concealment theory, Texas, and Tennessee, does that mean we have to reverse as to those three states? Yes. And tell me why that is. Because the court engaged in presumptions of those elements in those states, and indeed didn't even address some of those elements of New York law to make the determination for class certification. Okay. Now, let's look at the second bucket. So in another bucket, there seem to be some states where no reliance is required. Do you agree with that? Missouri, for example, I don't think would require reliance. However, Missouri has case law saying materiality is critical. The Coca-Cola case from the Missouri Supreme Court, and as echoed in the White v. Just Born case, says that if the class includes plaintiffs who don't care about the alleged violation or knew about the violation and purchased the products anyway, they can't be in the class. What about Florida and Washington? Florida is a state that engages in objective determination of whether a reasonable consumer would find the matter— I do agree. It doesn't matter whether a plaintiff actually relied on the illegal misrepresentation provision. Correct. But I think it is critical to note there that in particularly in looking at the Crayola case from the circuit, courts in interpreting that have said the important part there is the court's note that it needs to be consumers that were in the same circumstances. And so if you look at ensuing cases such as the Deere construction case and the townhouse restaurant case, those courts note that if you have individuals who saw different representations, had contacts with individuals at the defendant that may have changed the analysis— I'm not sure those district — I'm not sure I agree with everything those district courts say, but I understand that you rely on them. Yes. So what other ones? I just want to get the universe. So we're talking about Washington, Florida. What other ones do we have? Yes. California says that to engage in presumptions, you have to have a uniform— So I'm not to presumptions yet. I'm just those that require reliance without presumption. You do have to have reliance in California. Okay. All right. And then let's talk about the states that allow reliance — I'm sorry, that require reliance. So, sorry, the second bucket was those that don't require. We agree that New York, at least its consumer fraud does not require it, Florida does not require it, and Washington does not require it. How about Missouri? Missouri does not require reliance. Okay. So then we have the third bucket, which is those that require it but allow these two presumptions possibly. One, a price premium theory, and one, what I'll call an extensive advertising theory. Which states fall within those? The presumptions, California permits presumptions about reliance and perhaps other issues, but it's important that it has to be in a case where there was exposure to the same information. The Maza case from the Ninth Circuit, I would note there in particular. Did the district court here — so I agree with you. Did the district court here make findings regarding these theories for those states? No. It did not. No. Their one-paragraph determinations for each state on class certification did not delve into these issues. Would we have to send it back to make those findings? In other words, we wouldn't say you couldn't certify or not. We'd simply say we just are unable to tell based on their what — under what theory the evidence would show that as a class-wide basis you could prove X or Y. I think it's fair to say that these issues were not considered. However, I think the record here would make it exceedingly difficult to move to those presumptions. But to answer your question directly, no, the district court did not wrestle with those presumption issues. But where you have all of these states that permit presumptions only where you have uniform misrepresentations, I think it would be exceedingly difficult for the district court to get there. And I've tried to make as much sense of this as I can because there's a lot of balls in the air. Did — where in your brief is there argument-preserving error with regard to a California common-law fraud theory — so not the consumer statute, but common-law fraud theory — and a Washington common-law theory? I think there's — in the opening brief, there's a section that goes through state by state. It does. But I think as regard to those states, they deal with the consumer protection statutes and not with the common-law fraud theories. I thought, Your Honor, there was at least a footnote with respect to Washington looking at the common-law fraud aspect of that as well. And I think with respect to that point I was just making about the variations in representations, I think particularly important is a statement that the district court made at page 10 of the decision in looking at Ford's summary judgment motion on the basis of the deceptive advertising claims. And it said there — and it was quoting from Ford's brief — but it said the statements at issue were made in a wide variety of contexts, some of which included pictures of vehicles and road courses and some that didn't, some of which differentiated between models and some did not, some that specifically identified which models had coolers and noted that coolers were needed for track-day use, and some that did not. And it ended that quote, and the Court had one word afterwards, exactly. And it then went on to say, I can't deal with summary judgment here because there's too much variability in these statements. That's the problem when you get to the latter part of the decision. So are you saying that that is a finding of the Court, that there was no extensive — there was no extensive advertising campaign on a sole thing from which all consumers or at least we can presume that all consumers saw? Correct. And the Court sort of brings together of its own making a unified statement in that regard, but it comes after this point that there's this wide variation in what was actually said to the class members. I see my time has expired. Very well. You've got your full rebuttal time remaining. Thank you. Mr. Berman, let's hear from you. Good morning. May it please the Court. Steve Berman on behalf of the Appellee. You asked a question, what kind of case is this, an affirmative misrepresentation case or an omissions case? I think it's very clear it's an omissions case, and I direct your attention where it's clear in the record. Because if you look at the jury instructions, that's at Plaintiff's Appendix, Volume 4, Docket 307, Page 177. Weren't those filed after this, though? Yes, they were. That's tough for us to look at, I think. I have to tell you, to my mind, I know there's some debate amongst you. It seems to me you argued omissions theory, and I think you might have probably argued both, but I don't have a problem with you having preserved an omissions theory here, and I tend to agree that I'm not sure that it matters all that much, but does it matter? It does matter. Why? Because in an omissions case, and take, for example, in Florida under the Curriculio case and the Fitzpractice case, what the Court have said is when you have an omissions case under those statutes, reliance is not an element, and the subjective feeling of each class member is irrelevant. You're looking at an objective standard. Would a reasonable person have attached importance to the omission? But I guess I have two questions. I mean, one, as I read the complaint, the motion for class cert, the district court's decision, it doesn't seem to me like this was ever really teed up in anyone's mind as a pure omissions case in like the affiliated ute kind of way where you arguably get the benefit of some presumption, and the difficulty here is that the district court, in my mind, speaking for myself, seems to have imposed almost as if it's sort of an aspect of the federal common law, this across-the-board presumption that applies without respect to state borders. So to answer your question, at page 42 of the Court's certification order, the Court begins a state-by-state analysis and went through the requirements of each state as to whether reliance was required, whether there's a pure omission standard. How do you prove your case on a state-by-state basis? Is my — Counsel, is my description accurate in terms of the law? It seems to me that there are — there's those three categories. Is that a fair description? I agree with your buckets. Okay. So there's at least some where reliance is not required. Not required, that's right. Yeah. How could you give — I'm sorry, where reliance is — I apologize — where reliance is required and it seems to me not subject to the presumption? Do you agree that there's at least some states that fall into that category? I don't agree with that. How's that possible? Because the states he certified — take California, for example. Reliance is required in California. I agree with you on California, but that isn't what I'm talking about. Texas, for example — and I think you all fight over the Sheen case — but Texas, for example, seems to require actual reliance and doesn't give any indication of presumptions. And I would — Tennessee, too. I would refer the Court to the Vince case for Texas, which suggests that in circumstances where there are uniform representations made to the class, a presumption might be applicable. That's not a Texas — that's not a Texas Supreme Court case like Sheen is, is it? No, I understand that. Right. I don't think the Texas Supreme Court has addressed this issue. What about — what about Tennessee? Tennessee, I'd have to rely on what we've cited in a brief. I can't recall Tennessee offhand. But the important point, I think, Your Honor, in trying to synthesize this issue is the finding of the district court, the following finding. Ford's representations were uniform, and the evidence appears to show that no class member could have known that these cars could not be run on the track. So maybe I'm speaking only for myself, and I could have this all wrong. But in my mind, it sort of does matter whether this is a pure omissions case, or at the other end, a pure misrepresentation case, or somewhere in the middle, a sort of a half-truth case. Because if it's anything other than a pure omissions case, then the sort of the affiliated rule doesn't apply. And if you're in misrepresentation land or half-truth land, at least generally speaking, you don't get the benefit of this presumption. That may vary to some extent on a state-by-state basis. But I don't think that you'll be able to convince me that either in sort of 10b-5 land, or on a state-by-state basis, that in misrepresentation bucket or half-truth bucket, this presumption applies. Well, let me respond twofold to that, Your Honor. Number one, we made it very clear in every moving paper, which are in the record below, that we were moving for certification on 10 relevant consumer protection acts that prohibit omissions. And we said that to the Court over and over again. For example, Plaintiff's Act Volume 1, Docket 178 at page 51, Docket 178 at page 56. We repeatedly told, and I think the District Court understood, that we were proceeding on an omissions case. I think I understand that you allege that there were, in fact, omissions. But you challenge at every turn, so far as I can understand the record, the advertising and marketing of Ford. So there are statements that are made from which are omitted certain material facts, in your view. But to me, that sounds like a half-truth case, not a pure omissions case. This isn't like silence, right? You don't allege silence. You allege a statement that was not fully true because it omitted some material fact. So, again, a two-fold answer there, Your Honor. One, the advertisements, and this was confusing, because I read the opinion again and again, getting ready. Well, and it's not just the opinion. It's like your complaint. So we changed theories, okay? We came in, you know, talking about the advertising. When we moved for class certification, we focused on omissions. And these advertisements... Just so I'm clear, does the class cert motion itself not refer to marketing communications about the cars being track capable? The marketing is for materiality. I mean, but it's a communication. It's a representation, right? I mean, I'm not trying to, like, split hairs. I am not splitting hairs. I think it's a very important point, because we're proceeding on omission. And the main omission here is when you bought your car, nothing was said that it was not track worthy. That's the main omission. The advertising comes into play because we need to show that Ford understood, because it's Ford's conduct that's at issue here in an omission case. Ford understood that it was material to the class that these cars run on the track. We're not trying to prove that that statement was true or false. We're just trying to show Ford understood it was material. So it's no part of your theory that when Ford says, this car is track ready, that's not true. That's not part of your liability argument? It's not part of our deception claim. But under the Consumer Protection Act, you have to show materiality. And so, yes, we're going to show that it's true, but not in terms of a class member having to rely on that statement. That's not relevant to the omission claim. And so, the other point I would like to make to the court, and it's a very important point, is... Can I ask you just one? I hate to do this. Can I ask you just one question, just so I'm keeping all this straight in my head? Do you disagree, as a matter of law, that if we are not in the pure omissions bucket, if we are in the misrepresentation bucket or the half-truth bucket, that at least in an affiliated ute setting, the presumption doesn't typically apply? You sort of need this to be an omissions case in order to get the benefit of the presumption. That's all I'm really asking, I guess. Yes, for the states that allow that. For the states that require reliance, we do need a presumption. And, you know, for California, I think pretty clearly allows a presumption of reliance when there's a uniform course of conduct. That's the Nguyen case. And I think I would like to make one point perfectly clear here. If you look at Ford's brief, they rely on the Clay case for the notion that any time you have material variation in representations, certification's unsuitable. Of course, Clay is a RICO, clearly has a reliance element. But more importantly, this is the theme in Ford's brief, that there were individual differences of knowledge by the class members. But the district court cut that off. And what do I mean by that? The district court defined the class period to end in April 2016 because he found no evidence in the record that there was any communication, even a questionable communication, from Ford to the consumers. In April, Ford told the dealers that there might be this problem, but there's no evidence, no evidence, that any consumer could have known about this problem. Zero. So all the variations that Ford hypothesizes just don't exist because of what the district court did. The district court acted very conservatively. It cut the class so that there are no knowledge issues. There are no subjective issues. We lost half our class because of that. But this was a very conservative decision. The court went through again. Counsel said that Judge Moreno did not do the state-by-state analysis. He did. It's in his opinion. He went through every state. And unless you have further questions, I don't feel the need to use all my time. Can I ask you one more? Sure. Wasn't there, and I'm sorry if I'm sort of hung up on this pure omissions against half-truth sort of distinction, but wasn't there in your complaint, one, what I'll call like pure omissions claim, obviously pure omissions claim, and that was that the car could go into limp mode even in non-track conditions. And he dismissed that. Dismissed it. And didn't he, in dismissing it, call it the omissions claim? If he did, I don't believe that he was categorizing it that way because if you look at his opinion and the way he wrestles with the various state laws, it's clearly understood that we were bringing an omissions claim. And the record sites I gave you earlier, those are our briefs where we're telling the court we're just going for omissions. Yeah. So even though, I'm not really trying to like make the case turn one way or the other on his characterization of it, but doesn't that characterization make some sense? Like if the point is Ford advertises these cars as track ready, your argument is, but they're really not because they go into limp mode in track conditions. That sounds half truthy to me. Whereas the claim that, oh, and by the way, it's even worse than that. They go into limp mode in non-track conditions. They've never said anything about non-track conditions. So that, of course, is an omission. That's a pure omissions claim because it's just silence. Ford said nothing about the non-track conditions and it goes into limp mode. And so that, in my mind, is a pure omissions claim. But that one's out of the case. It does seem different to me than the claims that survived where Ford said something and you say, yeah, it's really not or it's not fully true. At most, it's half true because, in fact, they can go into limp mode in track conditions. So I would refer you to the Daniels versus Ford case in the Ninth Circuit. I think it's the best articulation of how omissions work in the automobile context. And there the court said, you don't need to show reliance because it's a objective, reasonable consumer standard and the fraud occurs or the omission occurs at the point of sale. You don't have to look at what Ford said or any auto manufacturer said in Daniels before the Ninth Circuit says, hey, you had an opportunity to tell consumers the truth at the point of sale. Either in a brochure you didn't give them, in a handout you didn't give them, or the dealer could have said the car has this problem. And that's what didn't happen here. I guess I would have thought that a pure omissions case in a circumstance like this would be Ford never says anything. It just sells a car. It's like sort of take it or leave it. Here's the car. And then you learn that it goes into limp mode in track, under track conditions. And you say, hey, you never told us that it would go into limp mode under track conditions. That's, you know, Ford was completely silent about that fact. It just seems that that's different here. Your complaint is that Ford advertised these cars as track ready. And in fact, your contention is they're really not quite track ready. I see your point, but I'm not sure I understand where it drives us. Well, the reason I think anyway, and again, you know, sort of I'm familiar with this area of the law on the sort of in the security side more than I am here. And I understand it's a state by state analysis. But I think the way, for instance, that the U.S. Supreme Court got to a presumption of reliance on affiliated ute is in a pure omissions context, you've got sort of like nothing else that the plaintiff could plausibly point to. And so you sort of have to infer reliance. Whereas in a misrep case or a half truth case, there is evidence from which a plaintiff could prove reliance. And so I think anyway, the sort of the general thrust of the law is that the plaintiff is going to be required to prove the reliance. So I would refer you to the Carrillo case and the Fitzpatrick case where the court said with respect to yogurt, it doesn't matter whether any given plaintiff thought that had certain digestive properties. What matters is whether a reasonable consumer would have been misled. That's under Florida law, right? Yes. Right. Let's, we have a couple, I want to ask a couple questions on something a little bit different. And this is the manifestation issue, which is somewhat related here. It seems to me in Brown, we said that a district court that doesn't make findings regarding manifestation, that's error and needs to be sent back because that's exactly what we did with exactly the same two states in exactly the similar sort of issue. Don't we have to send it back for the district court to make findings regarding manifestation since both states seems to require that as part of their reliance law or their fraud law? The answer is yes and no. Many states don't require manifestation. I agree. I'm talking specifically about California and Texas. I'm not saying the whole thing. Well, I don't believe California requires manifestation. I think the Nugent case. Isn't that what we said in Brown? Says, well, we're talking about the California most recent case. I know, Brown, our decision. Your decision in Brown. Which we said in a fraud case out of Texas and California. Well, in this case, the judge found manifestation exists from the get-go. Manifestation is not actually going into limp mode. Manifestation is when I got the car, it contains a defect that is operative the moment I get it. Where is that finding that the defect manifests itself at the time that the car is purchased? It's in the judge's order. And in fact, the judge went on to say... Well, the judge's order is like 50 pages. So if you point me to... I can't sit in here. But what I could tell you, and there's a very important point on that in the judge's order, where he says, Ford's being very disingenuous on manifestation. And on the one hand, Judge Moreno says, Ford says, we designed the car that way. We designed it purposely to go into limp mode. We're proud of that. And then they said, well, wait a second. You can't bring a claim until there's actual manifestation. And the judge found that's completely contradictory. And therefore, he found manifestation. All right. And then regarding manageability, the district court rightly acknowledged that there may be some issues in trying a case like this and said, I'll deal with those as they come. We seem to have criticized that approach in vega. How do we square the I'll deal with it as it comes up approach to what we said in vega, which is you need to consider manageability seriously up front and how you're going to deal with these very issues. In other words, you have to identify the issues and articulate how you're going to manage this class action. Well, I think the judge went to a great amount of detail as to each state. And how he managed it is simple. He carved out any state that he thought there would be individualized issues because it was finding that knowledge did not get up to this day. And I think that's how he managed it. And he's also got trial plans, which weren't there in the vega case. He has jury instructions, which weren't there in vega case. He had all this material before him. So he had a much better record. And on manageability, the concerns are hypothetical. I just tried a case in September in the Eastern District of Michigan, an MDL case, a car case. There were 19 states at issue. There was a jury instruction for every single state. The jury returned a verdict on all states. In 13, in three days, no issues came up during deliberation. So Ford is speculating that there might be manageability problems. My experience, juries can handle it. That's all I have. Okay, very well. Thank you very much, Mr. Berman. Mr. Bisner, you've got three minutes of rebuttal time remaining. Thank you, Your Honor. One quick point that I wanted to make is that, as we've been talking about these omission issues in the reference to California and other states in that regard, a number of these states have requirements that if you have to show that if the omitted information had been known to the class members, they would have behaved differently. And as the Court noted, there are some cases like sending your child to a camp where you weren't told that there was a sex abuser among the counselors at the camp or the owner of the camp. You can get there as a matter of common sense pretty quickly. But where you're talking about product choices, such as the soda case that the Court dealt with, you have to think of would the class, is there evidence that the class would have come out differently had they known the information? And here, unlike a lot of other class cases, there's a record saying this limp mode didn't matter to the majority of the class members and pretty significant majority of class members because they never had any intent of using these vehicles for track days when they purchased these vehicles. And there are many other uses, competitive uses for these vehicles. And so under Heinemann and California and other cases where this omission theory has been asserted, that's critical. You also have the point that the summary judgment ruling here is also very critical because the Court went through the situation of a number of individual plaintiffs who, for example, had knowledge of these issues. The Court later in the decision says, well, there's no one and could know about this. But the Court in the early part of the decision dealt with summary judgment motions where there was deposition testimony. —Counsel, I agree with you that you often don't see orders that fold those two things together. But the standard for one is so far different than the other. Simply, we're asking for a class action is, is this capable of class-wide review? In other words, is this an evidentiary basis that's capable of being proved? Not whether it is proven, but if there is evidence there and it is capable of being proved that way, then class action is a form for which we can do that. —But here we get into the Rules Enabling Act issue. Those summary judgment rulings where the Court said, this has got to go to a jury, there's a credibility issue with respect to this claimant because if they knew, they don't have a claim. The Court said that. If you have a class action, at least with respect to all of the other class members, these were class representatives, so you've got to believe there's others out there in the class like them. —Has there any circuit that has accepted that theory, the Rules Enabling argument that you're making now? —Yes. I mean, we think in the Sacred Heart case of this Court, that's the basis of our argument in that regard. But even leaving aside Rules Enabling Act, Your Honor, it makes clear that the summary judgment ruling, we believe, makes clear that the factual variations here among the individual claimants, looking at the claims under the various State rules and what they have to prove, indicates too much variability to fairly certify a class here. Thank you. —Very well. Thank you very much, Mr. Bisoner. Thank you both. Well argued on both sides. That case is submitted.